**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
*Northern Division*

|  |  |  |
|---|---|---|
| | * | |
| TRADEMARK REMODELING, INC., | | |
| | * | |
| Plaintiff, | | |
| | * | |
| v. | | Case No.: PWG-11-1733 |
| | * | |
| GREG RHINES | | |
| and | * | |
| SHARON RHINES, | | |
| | * | |
| Defendants. | | |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM AND ORDER

This Memorandum and Order addresses Plaintiff Trademark Remodeling, Inc.'s Amended Motion to Modify, Vacate, or in the Alternative, Correct an Arbitration Award,[1] and its accompanying memoranda, ECF Nos. 16, 17, and 18; and Defendants Greg and Sharon Rhines's Response in Opposition to Plaintiff's Amended Motion and its accompanying memorandum, ECF Nos. 24 & 25. Plaintiff did not file a reply and the time for doing so has passed. *See* D. Md. Loc. R. 105.2.a. This Memorandum and Order also addresses Defendants' Motion to Enforce Award of Arbitrator, which was originally filed in state court and is attached

---

[1] In a Memorandum and Order dated August 24, 2011, various procedural issues related to Plaintiff's filings were resolved, and Plaintiff was directed to file an Amended Motion to Modify, Correct, or Vacate an Arbitration Award and to properly serve the amended motion on Defendants by United States Marshal. *See* Aug. 24, 2011 Mem. & Order, ECF No. 11. Plaintiff, complying with this Order, filed its amended motion on September 20, 2011. Service on Defendants was properly performed by United States Marshal on September 23, 2011, and proof of service was filed on November 7, 2011. Pl.'s Process Receipt & Return 1, ECF No. 26.

to this Memorandum and Order as Exhibit A,[2] and the supplemental briefing I permitted the

parties to file once I concluded that I would rule on the pending motions from the papers:[3]

Defendants' Supplemental Memorandum, ECF No. 47-1; Plaintiff's Response to Defendants'

Supplemental Memorandum, ECF No. 48; and Defendants' Reply, which is attached as Exhibit

B.[4]   Thus, the parties were given a full opportunity to present evidence in support of their

arguments.   While Plaintiff did elect to file with the Court a limited amount of evidence by way

of affidavits and documents,[5] by and large what Plaintiff submitted was an Amended Motion

---

[2] On March 30, 2012, I issued a Memorandum and Order denying Defendants' Motion to Remand, ECF No. 19.  *See* Mar. 30, 2012 Mem. & Order, ECF No. 40.  As a practical matter, that ruling means that "all matters relating to the arbitration agreement between the parties and the subsequent award will be litigated in federal, rather than state, court." *Id.* at 18.   Put differently, in light of my ruling, "both [Defendants'] Motion to Enforce Award of Arbitrator, originally filed in state court, and [Plaintiff's] Amended Motion to Modify, Vacate, or Correct an Arbitration Award," originally filed in federal court, will be resolved in this Court. *Id.*  The resolution of Plaintiff's Amended Motion to Modify, Vacate, or Correct an Arbitration Award will necessarily resolve Defendants' Motion to Enforce Arbitration Award, and vice versa.

[3] As I explained in my June 27, 2012 Letter Order, ECF No. 47, under the Federal Arbitration Act—the statute governing this case—applications to vacate, modify, or correct an arbitration award are to be "made and heard in the manner provided by law for the making and hearing of motions." 9 U.S.C. § 6; *see also Switzer v. Credit Acceptance Corp.*, No. 5:09cv00075, 2010 WL 424573, at *2 (W.D. Va. Jan. 27, 2010) ("[A]ll relief under the FAA must be sought in the form of a motion.").  *See generally* Fed. R. Civ. P. 7(b).  By federal and local rule, rulings on motions may be made from the record, without a hearing.  *See* Fed. R. Civ. P. 78(b); Loc. R. 105.6. Where the parties' filings sufficiently brief the issue of whether an arbitration award should be vacated, modified, or corrected, the ruling may, as a general matter, be made on the basis of the record before the court, which includes the parties' briefings and memoranda and the arbitration record.  *See O.R. Secs., Inc. v. Prof'l Planning Assoc., Inc.*, 857 F.2d 742, 746 (11th Cir. 1988); *Legion Ins. Co. v. Ins. Gen. Agency, Inc.*, 822 F.2d 541, 542 (5th Cir. 1987).

[4] On May 9, 2012, I granted defense counsel's Motion to Withdraw, ECF No. 42. *See* May 9, 2012 Marginal Order, ECF No. 44. The Rhines are now proceeding in this action *pro se*. *See* May 9, 2012 Ltr. from Clerk of Court to Mr. & Mrs. Rhines, ECF No. 45.  Defense counsel prepared Defendants' original Response in Opposition to Plaintiff's Amended Motion.   *See* Defs.' Supp. Mem. 1.  The supplemental briefings were prepared by Defendants *pro se*.  *See id.*

[5] Plaintiff's Amended Motion was not accompanied by any exhibits.   As exhibits to its Supplemental Memorandum, Plaintiff attached four affidavits—two containing the testimony of Plaintiff's former counsel, and two containing the testimony of its primary officers. Additionally, four exhibits are letters from Plaintiff's current counsel to Plaintiff, providing a detailed breakdown of her billing to date. *See* Pl.'s Supp. Mem. Exhibits, ECF Nos. 48-1–48-9.

comprised of sixty-eight largely conclusory assertions unsupported by specific facts. The affidavit submitted by Plaintiff's former attorney does not affirmatively state that it contains facts of which the affiant had personal knowledge; the affidavit also is replete with argument and legal conclusions. The affidavits submitted by Todd Swanson and Eric Swanson, two of Plaintiff's primary officers, similarly fail to state that the facts referenced are based on the affiants' personal knowledge, and contain abundant argument, speculation, and conjecture. The vast majority of what Plaintiff cited in support of its Motion to Modify, Vacate, or Correct was allegation and argument, and very little was of a helpful factual nature.

## I.   BACKGROUND

In March 2009, the parties entered into a construction contract. Pl.'s Am. Mot. ¶ 6; Defs.' Supp. Mem. ¶ 1; *see* Agreement to Contract for Remodeling Services ("Construction Contract"), Pl.'s Compl. Ex. 4, *in* ECF No. 1-2, at 8–20. The contract provided that any disputes among the parties would be submitted to binding arbitration. *See* Construction Contract 20. A dispute arose, and the parties proceeded to arbitration. *See* Pl.'s Am. Mem. in Supp. Vacation 3; *see also* Defs.' Supp. Mem. 1. On March 29, 2011, an arbitrator awarded $83,408.25 to Defendants. Pl.'s Am. Mem. in Supp. Vacation 3; Defs.' Supp. Mem. 1. In May 2012, Defendants (the Rhines) instituted a state court action to enforce the arbitration award. *See* Defs.' Motion to Enforce 2. In June 2011, Plaintiff (Trademark) instituted the present case in federal court, seeking to vacate, or in the alternative, modify or correct the arbitration award. *See* Compl., ECF No. 1. Pursuant to my March 30, 2012 Memorandum and Order, which denied Defendants' Motion to Remand, both the Motion to Enforce, originally filed in state court, and Trademark's Amended Motion to Vacate, Modify, or Correct, originally filed in this Court, will be resolved by this Order. *See* Mar. 30, 2012 Mem. & Order 18, ECF No. 40.

## II.   DISCUSSION

In the present motion, Plaintiff requests that the Court vacate, modify, or correct the March 29, 2011 arbitration award made in Defendants' favor.  A federal court's review of an arbitration award is "'substantially circumscribed.'"  *Three S Del., Inc. v. DataQuick Info. Sys., Inc.*, 492 F.3d 520, 527 (4th Cir. 2007) (quoting *Patten v. Signator Ins. Agency, Inc.*, 441 F.3d 230, 234 (4th Cir. 2006)).  Indeed, "the scope of judicial review for an arbitrator's decision 'is among the narrowest known at law because to allow full scrutiny of such awards would frustrate the purpose of having arbitration at all—the quick resolution of disputes and the avoidance of the expense and delay associated with litigation.'"  *DataQuick*, 492 F.3d at 527 (quoting *Apex Plumbing Supply, Inc. v. U.S. Supply Co., Inc.*, 142 F.3d 188, 193 (4th Cir. 1998)); *see Remmey v. PaineWebber, Inc.*, 32 F.3d 143, 146 (4th Cir. 1994) ("Opening up arbitral awards to myriad legal challenges would eventually reduce arbitral proceedings to the status of preliminary hearings.  Parties would cease to utilize a process that no longer had finality.  To avoid this result, courts have resisted temptations to redo arbitral decisions.").  Thus, in reviewing arbitration awards, federal courts are "'limited to determine whether the arbitrators did the job they were told to do—not whether they did it well, correctly, or reasonably, but simply whether they did it.'"  *DataQuick*, 492 F.3d at 527 (quoting *Remmey*, 32 F.3d at 146); *see also Remmey*, 32 F.3d at 146 ("Courts are not free to overturn an arbitral result because they would have reached a different conclusion [on] the same facts.").

The Federal Arbitration Act, 9 U.S.C. §§ 1–16, narrowly states the grounds on which a court may vacate, modify, or correct an arbitration award.  *See* 9 U.S.C. § 10 (vacation); 9 U.S.C. § 11 (modification or correction).  A court may vacate, modify, or correct an arbitration award only when the moving party has established one of the grounds listed in the statute or one

4

of the limited grounds recognized at common law. *See DataQuick*, 492 F.3d at 527; *Switzer v. Credit Acceptance Corp.*, No. 5:09cv00075, 2010 WL 424573, at *2 (W.D. Va. Jan. 27, 2010). The moving party must make this showing with specific facts; "bald faced allegations" are not sufficient. *See Colonna v. Hanners*, No. 08:10-CV-1899-AW, 2011 WL 2175248, at *4 (D. Md. June 1, 2011); *see also Consolidated Coal Co. v. Local 1643, United Mine Workers of Am.*, 48 F.3d 125, 129 (4th Cir. 1995) (stating that a showing of certain grounds must be "'direct, definite, and capable of demonstration rather than remote, uncertain or speculative'" (quoting *Peoples Sec. Life Ins. Co. v. Monumental Life Ins. Co.*, 991 F.2d 141, 146 (4th Cir. 1993))). Below, I consider the statutory and common law grounds for vacation and modification/correction, and the parties' corresponding arguments, ruling separately as to each.

### A. Vacation

A party seeking to vacate an arbitration award "must sustain the heavy burden of showing one of the grounds specified in the Federal Arbitration Act or one of certain limited common law grounds." *DataQuick*, 492 F.3d at 527 (citing *Patten*, 441 F.3d at 234). The Federal Arbitration Act provides four instances where vacation is permitted: (1) "where the award was procured by corruption, fraud, or undue means"; (2) "where there was evident partiality or corruption in the arbitrators, or either of them"; (3) "where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehaviour by which the rights of any party has been prejudiced"; or (4) "where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made." 9 U.S.C. § 10(a). Additionally, the Fourth Circuit has noted two common law grounds for vacation: (1) "where an award fails to draw its essence from the contract"; and (2) where "the

award evidences a manifest disregard of the law." *DataQuick*, 492 F.3d at 527 (citing *Patten*, 441 F.3d at 234) (internal quotation marks omitted).

### 1.    Corruption, Fraud, or Undue Means

An award may be vacated if it was "procured by corruption, fraud, or undue means."  9 U.S.C. § 10(a)(1).  The phrase "undue means" has "generally been interpreted to mean something like fraud or corruption." *DataQuick*, 492 F.3d at 529; *see also Nat'l Cas. Co. v. First State Ins. Grp.*, 430 F.3d 492, 499 (1st Cir. 2005) ("The best reading of the term 'undue means' . . . is that it describes underhanded or conniving ways of procuring an award that are similar to corruption or fraud but do not precisely constitute either.").  To prevail under § 10(a)(1), the moving party must show that "the corruption, fraud, or undue means was 'not discoverable upon the exercise of due diligence prior to the arbitration' or during the arbitration, and that the corruption, fraud, or undue means 'materially related to an issue in the arbitration.'" *Belmont Partners, LLC v. Mina Mar Grp., Inc.*, 741 F. Supp. 2d 743, 749 (W.D. Va. 2010) (quoting *MCI Constructors, LLC v. City of Greensboro*, 610 F.3d 849, 858 (4th Cir. 2010)).  Additionally, the moving party must establish corruption, fraud, or undue means by clear and convincing evidence. *Id.* (citing *MCI Constructors*, 610 F.3d at 858).

Plaintiff alleges that the arbitrator's award should be vacated under § 10(a)(1) for several reasons.  First, Plaintiff alleges that Defendants presented at the arbitration hearing "confidential personal accounting information" of Plaintiff's principal, "in violation of professional standards of accounting and in breach of confidentiality."   Pl.'s Am. Mot. ¶ 29.   This evidence subsequently was "withdrawn by Defendants and/or the arbitrator after submission." *Id.* ¶ 30.  Nonetheless, Plaintiff maintains that the submission of this information "by undue means . . . created an atmospher[e] which tainted" Plaintiff's defense. *Id.*  Defendants do not specifically

respond to Plaintiff's argument, except to assert that Plaintiff has presented no evidence of actual corruption, fraud, or undue means.  *See* Defs.' Mem. in Opp'n 4; Defs.' Supp. Mem. 6. Plaintiff's argument is without merit.  No court "has ever suggested that the term 'undue means' should be interpreted to apply to actions of counsel that [may be] merely legally objectionable," *MCI Constructors*, 610 F.3d at 858, such as the presentation of confidential information. Moreover, Plaintiff has presented no evidence that the presentation of the allegedly confidential information in any way "materially related to an issue in the arbitration," or that it "actually factored into the [arbitrator's] liability determination."  *See id.*at 858–59. Nor could they, because they acknowledge that the allegedly confidential information was withdrawn by Defendant and the arbitrator after it was submitted.  *See* Pl.'s Am. Mot. ¶ 30.  Consequently, this argument does not present a basis for vacating the arbitration award.

Second, Plaintiff raises concerns relating to a $250.00 gift card allegedly given by Defendants to a former employee of Plaintiff, in exchange for his signing off on a "Punch List" of construction projects on the employee's last day of employment.  *See* Am. Pl.'s Mot. ¶¶ 32–38.  The former employee subsequently testified at the arbitration hearing by telephone.  *See id.* ¶ 39.  Plaintiff argues that the employee testified in exchange for the $250.00 gift card and that his testimony therefore was "submitted by undue means" in violation of § 10(a)(1).  *Id.* ¶ 40. Plaintiff's factual contentions do not indicate that the employee's testimony was made in exchange for the gift card.  Rather, Plaintiff states only that the employee received the gift card from Defendants after signing the Punch List.  *See id.* ¶ 34.  Defendants deny that they gave Plaintiff's former employee a $250.00 gift card as an inducement to testify favorably at the arbitration.  *See* Defs.' Supp. Mem. ¶ 12.  Rather, Defendants admit that they gave the employee a $150.00 gift card on the last day of his employment as a "thank you" for doing a good job as

the project manager of their remodeling contract. *See id.* More importantly, however, Defendants contend that the fact of their giving the gift card to Plaintiff's former employee was disclosed during the arbitration, and that Plaintiff's counsel cross-examined the witness about receiving the gift card. *See id.* Plaintiff does not deny that it was aware of these events during the arbitration, *see* John S. Weisse Aff. ¶ 15, Pl.'s Supp. Mem. Ex. 9, ECF No. 48-9, nor does it contend that it was unable to argue to the arbitrator that the former employee's testimony was biased as a result of having received a gift card from Defendants. Thus, Plaintiff had an opportunity to address the credibility of the former employee during the arbitration, and the fact that the arbitrator may have credited Defendants' explanation regarding the nature of the gift card over Plaintiff's explanation is not a basis for vacating the arbitration award.

Finally, Plaintiff claims that the arbitrator's method of conducting the arbitration hearing violated § 10(a)(1). *See* Pl.'s Am. Mot. ¶ 42. Specifically, Plaintiff states that the award was "procured by corruption, fraud, or undue means" because: (1) the arbitrator allowed witnesses under subpoena to testify by telephone,[6] *id.* ¶¶ 39 & 42; (2) the arbitrator allotted less than one

---

[6] Plaintiff also alleges that the arbitrator's decision to permit the witness to testify by telephone violated its Fifth Amendment due process right to "adequately and fully cross examine the witness." *See* Pl.'s Am. Mot. ¶ 41. Plaintiff's argument is made without citation to any legal authority. Courts have long emphasized that "the right to confront and cross-examine witnesses is a fundamental aspect of procedural due process." *Jenkins v. McKeithen*, 395 U.S. 411, 428 (1969). However, a "'mere allegation of a due process violation' is not a colorable constitutional claim." *Klemm v. Astrue*, 543 F.3d 1139, 1144 (9th Cir. 2008) (quoting *Anderson v. Babbitt*, 230 F.3d 1158, 1163 (9th Cir. 2000)). Instead, "the claim must be supported by 'facts sufficient to state a violation of substantive or procedural due process.'" *Id.* (quoting *Anderson*, 230 F.3d at 1163). Here, Plaintiff has "advanced no colorable basis for finding a procedural due process violation." *See id.* Plaintiff has not alleged that the arbitrator's decision to permit telephonic testimony "denied [it] the opportunity to prove [its] claim," *see id.*, nor has Plaintiff explained in any detail why it was unable to "adequately and fully cross examine the witness" by telephone. Rather, Plaintiff states, in conclusory fashion and without legal citation, that the use of telephonic testimony violates its due process rights. *See* Pl.'s Am. Mot. ¶ 41. This is not enough. *See Klemm*, 543 F.3d at 1144; *cf. Gedatus v. RBC Dain Rauscher, Inc.*, No. 07-1750, 2008 WL 216297, at *4 (D. Minn. Jan. 23, 2008) ("Petitioner has not presented the Court any

third of the hearing time to Plaintiff's case, *id.* ¶¶ 31 & 42; and (3) the arbitrator permitted Defendants to present a detailed itemization of damages for the first time in their closing arguments, *id.* ¶¶ 14–20, 42.  Plaintiff has not established by clear and convincing evidence that any of these actions amount to corruption, fraud, or undue means.  *See MCI Constructors*, 610 F.3d at 858 (explaining that counsel's decision "to present its principal arguments on rebuttal, thereby robbing [opposing counsel] of its opportunity to present a meaningful response at closing" does not qualify as "undue means"); *see also A.G. Edwards & Sons, Inc. v. McCollough*, 967 F.2d 1401, 1403–04 (9th Cir. 1992) (holding that the term "undue means" does not apply to "sloppy or overzealous lawyering").  Vacation is permissible "only where the *award was procured* by corruption, fraud, or undue means." *Forsythe*, 915 F.2d at 1022 (emphasis in original).  Plaintiff has failed to establish that the arbitrator's decisions with regard to the conduct of the hearing—appearance by remote means, timing of presentations—amounted to procurement of the arbitration by corruption, fraud, or undue means.  *See id.*

### 2.     Evident Partiality or Arbitrator Corruption

An arbitration award may be vacated if "there was evident partiality or corruption in the arbitrators."  9 U.S.C. § 10(a)(2).  To establish partiality under § 10(a)(2), the moving party must "demonstrate that a reasonable person would have to conclude that an arbitrator was partial to the other party to the arbitration."  *ANR Coal Co., Inc. v. Cogentrix of N.C., Inc.*, 173 F.3d 493, 500 (4th Cir. 1999); *see also Wells Fargo Advisors, LLC v. Watts*, No. 5:11cv48, 2012 WL 831878, at *4 (W.D.N.C. Mar. 12, 2012) ("The party seeking vacatur must point to evidence of an actual conflict of interest or identify a business or other connection that might create a

---

authority supporting his position that he was entitled to . . . live testimony at his arbitration hearing.  Further, he has not demonstrated that he was prejudiced by the presentation of testimony by telephone . . . . In fact, other courts have rejected similar challenges.").

reasonable impression of possible bias that the arbitrator failed to disclose.").   In making this determination, the court should consider four factors: (1) "the extent and character of the personal interest, pecuniary or otherwise, of the arbitrator in the proceedings"; (2) "the directness of the relationship between the arbitrator and the party he is alleged to favor"; (3) "the connection of that relationship to the arbitrator"; and (4) "the proximity in time between the relationship and the arbitration proceeding." *ANR Coal*, 173 F.3d at 500.  The alleged bias must be "direct, definite[,] and capable of demonstration rather than remote, uncertain[,] or speculative." *See id.*  Plaintiff has provided no evidence indicating that the arbitrator was partial to any party, nor has it identified evidence of an actual conflict of interest.[7]   Accordingly, § 10(a)(2) does not provide a basis for vacating the arbitration award in this case.

### 3.    Misbehaviour of the Arbitrator Resulting in Prejudice

A court may vacate an arbitration award "where the arbitrators were guilty of misconduct" or other "misbehaviour by which the rights of any party [were] prejudiced."  9 U.S.C. § 10(a)(3).  Under § 10(a)(3), "an arbitrator commits misconduct if he refuses 'to hear evidence pertinent and material to the controversy,'" or if he refuses "to postpone the hearing, upon sufficient cause shown." *DataQuick*, 492 F.3d at 530 (quoting 9 U.S.C. § 10(a)(3)).  Plaintiff does not allege that the arbitrator refused to hear pertinent evidence, or that the arbitrator refused to postpone the hearing. *See* Defs.' Mem. in Opp'n 5.  Rather, Plaintiff argues

---

[7] Without more, the fact that the arbitrator: (1) permitted one of Defendants' witnesses to testify by telephone; (2) controlled the timing of the presentation of evidence so that Plaintiff was given less time than Defendants; and (3) permitted Defendants to introduce certain evidence for the first time in their closing argument, does not demonstrate partiality toward Defendants. *See Watts*, 2012 WL 831878, at *4 (requiring the moving party to identify "an actual conflict of interest" or "business or other connection that might create a reasonable impression of possible bias"); *see also ANR Coal*, 173 F.3d at 500 (stating that the alleged bias must be "direct, definite[,] and [demonstrable] rather than remote, uncertain[,] or speculative").  The mere fact that the arbitrator ruled against Plaintiff on a number of issues does not constitute partiality, and therefore is not a basis for vacating the award. *See DataQuick*, 492 F.3d at 530.

that the general conduct of the hearing—permitting a witness to testify by telephone, the timing

of the presentation of evidence, and permitting evidence to be introduced for the first in closing

argument—constitutes misbehaviour, and that such conduct resulted in prejudice to Plaintiff.

*See* Pl.'s Am. Mot. ¶¶ 42 & 44.   I note, preliminarily, that "arbitrators have broad discretion to

set applicable procedure" in an arbitration hearing.   *Wachovia Secs., LLC v. Brand*, 671 F.3d

472, 480 (4th Cir. 2012).   Moreover, a showing of prejudice is "a precondition to vacating an

award pursuant to § 10(a)(3)."   *Al-Haddad Commodities Corp. v. Toepfer Int'l Asia Pte., Ltd.*,

485 F. Supp. 2d 677, 686 (E.D. Va. 2007).   Put differently, a federal court is entitled to vacate an

arbitration award only if the arbitrator's [conduct] deprives a party to the proceeding of a

fundamentally fair hearing."   *DataQuick*, 492 F.3d at 530.   "Aside from conclusory statements,"

Plaintiff has failed to demonstrate how the arbitrator's conduct at the hearing "rendered the

arbitration fundamentally unfair."   *See Cowle v. Dain Rauscher Inc.*, 66 Fed. App'x 525, 525

(5th Cir. 2003); *cf. Colonna*, 2011 WL 2175248, at *4 (stating that "bald faced allegations" are

insufficient).   A party is not denied a fundamentally fair hearing simply because the arbitrator

rules in the opposing party's favor.[8]   *See Cowle*, 66 Fed. App'x at 525 ("Arbitrators are not

guilty of misconduct . . . merely because they rule in the other party's favor.").

---

[8] I note that limiting the parties' presentation times is not misconduct so long as the parties are
given "an adequate opportunity to present [their] evidence and argument." *Forsythe Int'l, S.A. v.
Gibbs Oil Co. of Tx.*, 915 F.2d 1017, 1023 (5th Cir. 1990) ("The arbitrator is not bound to hear
all of the evidence tendered by the parties, [and error will be found only if the decision not to
hear evidence] so affects the rights of a party that it may be said that [it] was deprived of a fair
hearing."); *accord Int'l Union, United Mine Workers v. Marrowbone Dev. Co.*, 232 F.3d 383,
389 (4th Cir. 2000) ("An arbitrator typically retains broad discretion over procedural matters and
does not have to hear every piece of evidence that the parties wish to present."). Plaintiff has not
demonstrated that it was denied an adequate opportunity to present its evidence and argument;
rather, it has shown only that Defendants were given more. Moreover, the fact that the arbitrator
permitted a witness to testify by telephone does not establish misconduct. *See Al-Haddad
Commodities Corp. v. Toepfer Int'l Asia Pte., Ltd.*, 485 F. Supp. 2d 677, 686 (E.D. Va. 2007)
(finding that, although "cross-examination in person or by video would have been preferable to

### 4.      Failure to Make a Mutual, Final, and Definite Award

An arbitration award may be vacated if "the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made."  9 U.S.C. § 10(a)(4).  The arbitration award at issue in the present case, dated March 29, 2011, references the parties' March 25, 2009 construction contract.  *See* Award of Arbitrator, Pl.'s Compl. Ex. 1, *in* ECF No. 1-2, at 1–3.  According to Plaintiff, the reference to the March 25, 2009 construction contract "demonstrated that [the arbitrator] found the parties bound to the terms of their contract duly executed, on that day."  Pl.'s Am. Mem. in Supp. Vacation 5.  However, Plaintiff argues, the arbitrator "based all of his [award] figures on a damages sheet . . . and other extemporaneous submissions which terms were not included in the [March 25, 2009] contract." *Id.* at 5–6; *see also, e.g., id.* at 4 (stating that the arbitrator also awarded damages "based upon an unsigned proposal from August 2009").  Consequently, Plaintiff maintains that the arbitrator awarded damages for items not included in or outside of the scope of the March 25, 2009 contract.  *See* Pl.'s Am. Mot. ¶¶ 21–22; *see also id.* ¶ 23 (stating that the arbitrator awarded damages for a retaining wall and resulting flood damage that were not part of the March 25, 2009 contract).  Additionally, Plaintiff argues that the arbitrator awarded credits "based upon signed waivers," *see* Pl.'s Am. Mem. in Supp. Vacation 6; Pl.'s Am. Mot. ¶ 25 (asserting that "pool repairs were awarded by the arbitrator, even though a signed waiver for

---

cross-examination by telephone, the fact that telephonic testimony was ultimately used did not render the proceedings fundamentally unfair" under § 10(a)(3)).  Indeed, the American Arbitration Association's Construction Industry Arbitration Rules, which apply to this case pursuant to the parties' March 25, 2009 contract, *see* Construction Contract 20, provide that an arbitrator may "allow for the presentation of evidence by alternative means including video conferencing, internet communication, telephone conferences and means other than an in-person presentation," so long as these means "still afford a full opportunity for all parties to present any evidence that the arbitrator deems material and relevant to the resolution of the dispute" and so long as witnesses may be examined by that means.  *See*. Am. Arbitration Ass'n Indus. Arbitration Rules, R. 32(b), *full text of arbitration rules available at* http://www.adr.org/aaa.

the pool repairs" was presented at the hearing), for "items that were performed and not paid for," *see* Pl.'s Am. Mot. ¶¶ 21 & 26, and that were "inconsistent" and included "outrageous repair costs," *id.* ¶ 27.   Finally, Plaintiff argues that the arbitrator entered an award that violates the "four corners doctrine" and the Statute of Frauds.   Pl.'s Am. Mem. in Supp. Vacation 6; Pl.'s Am. Mot. ¶ 47.   For these reasons, Plaintiff states, the arbitrator exceeded his powers or "so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made."   *See* Pl.'s Am. Mem. in Supp. Vacation 5–6.

Defendants argue, in response, that the fact that Plaintiff "now disagrees with the arbitrator's Award and the itemized calculations therein after a full hearing and submission of evidence by all parties, all of whom were represented by counsel, does not constitute grounds to vacate the Award under section 10(a)(4)."   Def.'s Mem. in Supp. Defs.' Opp'n 5.   According to Defendants, Plaintiff fails to "explain how the arbitrator allegedly exceeded his powers or imperfectly executed them other than to just state [its] disagreement with the arbitrator's findings" and to "broadly characterize some of the damages as 'outrageous repair costs.'"   *Id.* at 5–6; *see also* Defs.' Supp. Mem. 6 ("While Plaintiff is certainly within [its] right[s] to disagree with the arbitration award, no evidence has been provided to prove that the arbitrator has exceeded or imperfectly executed his power during the arbitration process.").

A genuine dispute exists between the parties as to whether the March 25, 2009 contract embodies the full scope of their agreement, and whether, consequently, the arbitrator's reference to other evidence beyond the contract was appropriate.   When considering whether an award should be vacated under § 10(a)(4), "'[t]he question . . . is whether the arbitrators had the power, based on the parties' submissions or the arbitration agreement, to reach a certain issue, not whether the arbitrators correctly decided that issue.'"   *Am. Ins. Managers, Inc. v. Guarantee Ins.*

*Co.*, No. 1:07-CV-1615-MBS, 2011 WL 1162374, at *7 (D.S.C. Mar. 29, 2011) (quoting *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 130 S. Ct. 1758, 1780 (2010)). The scope of the Court's authority in this context is "exceedingly narrow." *Central W. Va. Energy, Inc. v. Bayer Cropscience LP*, 645 F.3d 267, 276 (4th Cir. 2011). Indeed, "'if an arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, the fact that a court is convinced he committed serious error does not suffice to overturn his decision.'" *Id.* (quoting *Major League Baseball Players Ass'n v. Garvey*, 532 U.S. 504, 509 (2001)). The only requirement is that the arbitrator's decision be "'rationally inferable from the contract'" or the parties' submissions to the arbitrator. *Id.* (quoting *Qorvis Commc'ns, LLC v. Wilson*, 549 F.3d 303, 312 (4th Cir. 2008)). Under the parties' March 25, 2009 contract, the existence and legitimacy of which neither party disputes, the arbitrator was given the authority to resolve any disputes between the client (Defendants) and the contractor (Plaintiff). *See* Construction Contract 20 ("In the event of a dispute between the Client(s) and the Contractor, both parties agree to submit the issue to binding arbitration."). While the arbitration provision does not limit the type of disputes that the arbitrator may handle, the provision, when read in light of the contract as a whole, is limited to only those disputes related to the work Plaintiff performed on Defendants' property. The provision does not, however, explicitly limit the arbitrator's authority to disputes about interpretation of the March 25, 2009 contract, and therefore, I find that the arbitrator did not exceed his powers or imperfectly execute them by considering evidence extrinsic to that contract. *See Am. Ins. Managers*, 2011 WL 1162374, at *7. Plaintiff has failed to demonstrate that the arbitrator exceeded his authority in determining that the parties entered into other enforceable agreements beyond the March 25, 2009 contract, nor do I find that he exceeded his authority by electing to award damages based on those additional agreements.

Plaintiff also asserts that the arbitrator awarded credits to Defendants: (1) inconsistently; (2) based on signed waivers; (3) for items that were performed but not paid for; and (4) that included outrageous repair costs. *See* Pl.'s Am. Mot. ¶¶ 25–27.  Because the parties chose to have the arbitrator issue his award in standard form, rather than as a "Reasoned Award" or a "Findings of Fact and Conclusions of Law," *see* Defs.' Mem. in Opp'n 4; Am. Arbitration Ass'n, Report of Preliminary Hearing & Scheduling Order, Defs.' Mem. in Opp'n Ex. 2, *in* ECF No. 25-1, at 6–8, the arbitration award itself contains little information regarding the arbitrator's decisionmaking process.  "It is well settled that arbitrators are not required to disclose the basis upon which their awards are made and courts will not look behind a lump sum award in an attempt to analyze their reasoning process," unless "they believe that the arbitrators rendered it in 'manifest disregard' of the law or unless the facts of the case fail to support it." *MCI Constructors*, 610 F.3d at 862–63 (citing *United Steelworkers of Am. V. Enter. Wheel & Car Corp.*, 363 U.S. 593, 598 (1960)); *In re Arbitration No. AAA13-161-0511-85 Under Grain Arbitration Rules*, 867 F.2d 130, 135 (2d Cir. 1989).  Plaintiff has presented the Court with no specific facts that support additional inquiry into the arbitrator's reasoning process.  Without additional evidence from Plaintiff, the moving party, the mere fact that the arbitrator ruled in Defendants' favor is not a basis to vacate the award. *See Cowle*, 66 Fed. App'x at 525.

Moreover, no evidence in the record demonstrates that the Court should vacate the award because it was "so imperfectly executed that a mutual, final, and definitive award . . . was not made." *See* 9 U.S.C. § 10(a)(4).  An award should be vacated as not final or definitive "only when the arbitrator either failed to resolve an issue presented to him or issued an award that was so unclear and ambiguous that the reviewing court could not engage in meaningful review." *Int'l Longshoremen's Ass'n, Local No. 1624 v. Hampton Rds. Shipping*, No. 94-1838, 1995 WL

19321, at *6 (4th Cir. Jan. 19, 1995).  There is no evidence that the arbitrator failed to consider

an issue put before him, nor do I find that the arbitrator's award is unclear or ambiguous.

Indeed, the arbitrator's award "could hardly be more final and definite."  *See Remmey*, 32 F.3d at

150; *see also* Award of Arbitrator 3 ("Accordingly, I award as follows; Respondent shall pay to

Claimants the net sum of [$83,408.25].  Payment shall be made within 30 days from the date of

this award. . . . This award is in full settlement of all claims and counterclaims submitted to this

arbitration.   All claims not expressly granted herein are hereby denied.").   Accordingly,

§ 10(a)(4) does not provide a basis for vacating the arbitrator's award.

### 5.    Award Fails to Draw Essence from Contract

In addition to the statutory grounds for vacation stated in the Federal Arbitration Act, the

Fourth Circuit recognizes two additional common law grounds.  The first is "where an award

fails to draw its essence from the contract." *DataQuick*, 492 F.3d at 527 (citing *Patten*, 441 F.3d

at 234).  An arbitrator's award fails to draw its essence from the contract where the arbitrator

"'fails to discuss, in his decision, critical contract terminology, which might reasonably require

the opposite result,'" *MCI Constructors*, 610 F.3d at 861 (quoting *Clinchfield Coal Co. v.

District 28, United Mine Workers of Am.*, 720 F.2d 1365 (4th Cir. 1983)), or where the arbitrator

"'has disregarded or modified unambiguous contract provisions or based on award upon his own

personal notions of right and wrong.'"   *Choice Hotels*, 519 F.3d 200, 207 (4th Cir. 2008)

(quoting *DataQuick*, 492 F.3d at 528); *see also Upshur Coals Corp. v. United Mine Workers of

Am., Dist. 31*, 933 F.2d 225, 230 (4th Cir. 1991) (explaining that an arbitrator's award does not

fail to draw its essence from the contract where it provides a "plausible reading[] of the

agreement").  Plaintiff has presented no evidence that the arbitrator: (1) failed to discuss critical

terminology; (2) disregarded or modified unambiguous contract provisions; or (3) applied his

own personal notions of right and wrong in issuing his award.  Instead, Plaintiff argues that the arbitrator considered information outside of the March 25, 2009 contract in rendering his award. As discussed above, the consideration of evidence of agreements between the parties that were extrinsic to the written contract does not provide a basis for vacating the award.

### 6.    Award Evidences Manifest Disregard of Law

The second common law ground for vacation is where "the award evidences a manifest disregard of the law."  *DataQuick*, 492 F.3d at 527 (citing *Patten*, 441 F.3d at 234).  Recent Supreme Court precedent has "inject[ed] uncertainty into the status of manifest disregard as [an independent] basis for vacatur."  *Wachovia*, 671 F.3d at 480–83 (discussing the Supreme Court's decisions in *Hall St. Assocs., L.L.C. v. Mattel, Inc.*, 552 U.S. 576 (2008), and *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 130 S. Ct. 1758 (U.S. 2010)).  The Fourth Circuit has interpreted the Supreme Court's recent decisions "to mean that manifest disregard continues to exist either 'as an independent ground for review or as a judicial gloss on the enumerated grounds for vacatur set forth in 9 U.S.C. § 10,'" but it has not resolved which of the two approaches is correct.  *Id.* at 483 (quoting *Stolt-Nielsen*, 130 S. Ct. at 1768 n.3).  The Fourth Circuit has stated, however, that "[w]hether manifest disregard is a 'judicial gloss' or an independent ground for vacatur, it is not an invitation to review the merits of the underlying arbitration."  *Id.* (citing *United Paperworkers Int'l Union v. Misco, Inc.*, 484 U.S. 29, 38 (1987)).  Accordingly, the Court endorsed continued application of a "two-part test which has for decades guaranteed that review for manifest disregard not grow into the kind of probing merits review that would undermine the efficiency of arbitration."  *Id.*  Under that test, in order to vacate an award for manifest disregard, the moving party must show that: (1) "'the applicable legal principle is clearly defined and not subject to

reasonable debate'"; and (2) "'the arbitrator[] refused to heed that legal principle.'"   *Id.* (quoting *Long John Silver's Restaurants, Inc. v. Cole*, 514 F.3d 345, 349 (4th Cir. 2008)).

Plaintiff argues, unencumbered by factual support or legal authority, that the arbitrator entered an award that violates the "four corners doctrine" and the Statute of Frauds.  *See* Pl.'s Am. Mem. in Supp. Vacation 6; Pl.'s Am. Mot. ¶ 47.  This is best construed as an argument that the arbitrator's award evidences a manifest disregard of the law.   Under the two-part test stated above, Plaintiff has provided no evidence that demonstrates that the arbitrator refused to heed applicable legal principles.   Instead, Plaintiff's arguments are entirely conclusory, and with regard to the Statute of Frauds, fail even to elaborate on which aspect of the Statute of Frauds allegedly has been violated.  *See, e.g.*, Pl.'s Am. Mem. in Supp. Vacation 6 ("The arbitrator abused his discretion by entering an award which violates the Statute of Frauds."); *see also Aikens v. Ingram*, 652 F.3d 496, 506 (4th Cir. 2011) ("'[I]t is not the Court's place to try to make arguments for represented parties.'" (quoting *Vazquez v. Cent. States Joint Bd.*, 547 F. Supp. 2d 833, 861 (N.D. Ill. 2008))).  Moreover, the four corners doctrine relates to interpretation of terms within a contract.  *See Tryon v. AgriNova Corp., Inc.*, No. WGC-09-329, 2011 WL 332415, at *15 (D. Md. Jan. 31, 2011) ("'If the language of a contract is unambiguous, [the court] give[s] effect to its plain meaning and do[es] not contemplate what the parties may have subjectively intended by certain terms at the time of formation.'   In other words, a court looks to the four corners of the contract." (alterations in original) (quoting *Cochran v. Norkunas*, 919 A.2d 700, 709 (Md. 2007))). Plaintiff does not challenge the arbitrator's interpretation of the March 25, 2009 contract, or allege that the arbitrator looked outside of the four corners of that contract to give meaning to certain terms therein.  Rather, Plaintiff challenges the arbitrator's determination that other enforceable agreements existed between the parties, and his decision to award damages

based on those agreements.  Accordingly, the four corners doctrine is not applicable here, and Plaintiff cannot establish that the arbitrator's award should be vacated for manifest disregard.

As explained at length above, Plaintiff has failed to establish any of the six statutory or common law grounds for vacating an arbitration award.  Accordingly, Plaintiff's Amended Motion to Vacate the March 29, 2011 Arbitration Award is hereby DENIED.

### B.  Modification or Correction

The Federal Arbitration Act provides three instances were modification or correction is permitted: (1) where "there was an evident material miscalculation of figures or an evident material mistake in the description of any person, thing, or property referred to in the award"; (2) where "the arbitrators have awarded upon a matter not submitted to them, unless it is a matter not affecting the merits of the decision upon the matter submitted"; and (3) where "the award is imperfect in matter of form not affecting the merits of the controversy."  9 U.S.C. § 11. Plaintiff's arguments in support of modification or correction almost entirely mirror the arguments presented in support of vacation.  Accordingly, I do not restate them here.

### 1.  Evident Material Miscalculation or Mistake

A court may modify or correct an arbitration award where the award contains some "evident material miscalculation of figures or an evident material mistake in . . . description."  9 U.S.C. § 11(a).  Courts generally have held that "even a mistake of fact or misinterpretation of law by an arbitrator provides insufficient grounds for modification of an award."  *Apex Plumbing*, 142 F.3d at 194.  Indeed, "[w]here no mathematical error appears on the face of the award," the award will not be altered.  *Id.* (citation and internal quotation marks omitted). Plaintiff points to no section of the arbitrator's award that contains mathematical errors or an incorrect description of any person, thing, or property referenced therein.  Plaintiff has identified

no material descriptive mistake or mathematical miscalculation that "appear[s] on the face of the arbitration award." *Id.* Accordingly, Plaintiff has not met its burden under § 11(a) and that section does not provide a basis for modification or correction of the award.

### 2.   Award Upon a Matter Not Submitted

An arbitration award may be modified or corrected where the arbitrator has "awarded upon a matter not submitted to [him], unless it is a matter not affecting the merits of the decision upon the matter submitted." 9 U.S.C. § 11(b). The record before me contains no evidence that the arbitrator ruled on a matter not submitted to him. Indeed, pursuant to the arbitration provision in the parties' March 25, 2009 contract, the arbitrator had nearly unlimited authority to rule on any dispute arising between the parties with regard to Plaintiff's completion of construction work on Defendants' property. *See supra.* Without evidence that the arbitrator awarded damages for matters unrelated to the construction arrangement between the parties, § 11(b) does not provide a basis for modifying or correcting the arbitrator's award.

### 3.   Imperfect Award in Matter of Form

Finally, a court may modify or correct an arbitration award where "the award is imperfect in matter of form not affecting the merits of the controversy." 9 U.S.C. § 11(c). Plaintiff does not advance any theory under which the award may be considered imperfect in form and, as such, has not met its burden under § 11(c). As explained above, Plaintiff has presented no legitimate basis for modifying or correcting the arbitrator's award. Accordingly, Plaintiff's Amended Motion to Modify or Correct the arbitration award is hereby DENIED.

## III.   CONCLUSION

For the reasons explained above, Plaintiff's Amended Motion to Modify, Vacate, or in the Alternative, Correct an Arbitration Award is DENIED. Consequently, Defendants' Motion

to Enforce is GRANTED.   Plaintiff is DIRECTED to provide the full amount awarded in the

March 29, 2011 arbitration award to Plaintiffs within sixty (60) days of this Order.


Dated: <u>August 6, 2012</u>                                    _____ /S/_____
                                                              Paul W. Grimm
                                                              United States Magistrate Judge

hlw